IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACOB R. NIEVES, individually, and on
behalf of all others similarly situated,
    Plaintiff,
vs.                                        Case No. 8:21-cv-01837-VMC-JSS

PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC.,

        Defendant.
                                              /

**MOTION TO DISMISS CLASS ACTION COMPLAINT (DOC. #1) PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

COMES NOW the Defendant, PREFERRED COLLECTION AND MANAGEMENT SERVICES, INC., (Preferred), by and through undersigned counsel pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and files this it's motion to dismiss the putative class action complaint of the Plaintiff, JACOB R. NIEVES, ("NIEVES") and states as grounds as follows:

**INTRODUCTION**

On July 30, 2021, Plaintiff filed his complaint (Doc. 1) on behalf of a putative nationwide class. (Doc. 1, ¶ 32). Defendant is a collection agency in Tampa, Florida. The complaint asserts violations of the: 1) Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Doc. 1, Count I, ¶¶ 48-54); 2) the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 et seq., (Doc. 1, Count II, ¶¶ 55-66); and 3) the Florida Consumer Collection Practices Act ("FCCPA" Fla. Stat. §559.55, et seq.)((Doc. 1, Count III, ¶¶ 67-71). All violations center around "collection calls" made by Defendant to Plaintiff beginning July 29, 2020, related to an unpaid "hospital emergency room [bill] in the approximate amount of $1, 200.00. Plaintiff refers to this unpaid bill as the alleged "subject debt." (Doc. 1, ¶ 18). Plaintiff further specifically alleges that

on one occasion he spoke with a representative of the Defendant and informed the representative that "he had no money to pay the subject debt," *id.* (¶ 20), and that Plaintiff "[a]dditionally . . . requested that Defendant cease its collections [sic] calls to him." *Id.* (¶ 21). The complaint is vague as to the duration, frequency or the total number of calls. The most specific allegation is that 1 year and 1 day before this lawsuit was filed Plaintiff started receiving the calls. Further, it appears that many of Defendant's calls to Plaintiff were unanswered. *Id.* (¶ 21). Defendant asserts that Plaintiff has failed to state a claim for which relief may be granted since Plaintiff has not alleged and cannot establish that Defendant used an automatic telephone dialing system ("ATDS"), further that inferences from the non-conclusory allegations are that Plaintiff provided his cell phone number implying consent under the TCPA. Further, since Plaintiff has alleged only a verbal request to cease collection calls, it is insufficient under the plain language of the FDCPA to stop collections efforts. In addition, the conclusory allegations as to the time, duration, frequency of the calls is too vague to establish any other claim under the FDCPA. Finally, with no Federal question remaining the Court should dismiss the FCCPA claim for lack of jurisdiction.[1]

1. **ARTICLE III STANDING**

Article III extends "'[t]he judicial power of the United States' . . . only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (quoting *U.S. Const. art*. III, §§ 1-2). "Standing doctrine is 'rooted in the traditional understanding of a case or controversy' and 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong'; it 'serves to prevent the judicial process from being used to usurp the powers of the political branches' and confines the

federal courts to a properly judicial role." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019)(quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013)). The receipt of one unwanted telemarketing call is a concrete injury, *see Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1269 (11th Cir. 2019), but the receipt of one unwanted text message is not a concrete injury. *Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019). In *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1305 (11th Cir. 2020) the Eleventh Circuit Court of Appeals concluded that Article III standing existed in a TCPA claim against a debt collector, *see Glasser*, 948 F.3d 1301, 1306 (11th Cir. 2020). While Plaintiff may have alleged sufficient injury to meet Article III "concrete injury" requirement, putative class members' standing is not resolved by the allegations related to Plaintiff's individual claim. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Each putative class member would also have to establish standing.

**2. STANDARD OF REVIEW**

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(6), federal courts accept as true "all facts set forth in the plaintiff's complaint." *See Sealed Unit Parts Co. v. Sycom Surge, Inc., 2019 U.S. Dist. LEXIS 54081, at *4 (M.D. Fla. Mar. 29, 2019)(quoting Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 n.12 (11th Cir. 2005)). In addition, the court must construe the allegations in the light most favorable to the plaintiff. *See M. T. V. v. Dekalb County Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006) (*citing Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1298 (S.D. Fla. 2009). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678, 129 S. Ct. 1937, 173

L. Ed. 2d 868 (2009) *(quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim, there are "plausible" grounds for recovery, and a motion to dismiss should be denied. *Twombly*, 550 U. S. at 556.

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Melford v. Kahane & Assocs.,* No. 18-cv-60881-BLOOM/Valle, 2018 U.S. Dist. LEXIS 178061, at *6 (S.D. Fla. Oct. 15, 2018)(*citing Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)). In reviewing a Rule 12(b)(6) motion to dismiss a complaint, the Eleventh Circuit utilizes a two-pronged approach in reviewing a pleading to determine whether it plausibly states a claim for relief. *See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679); see also Alfonso v. IRS, No. 5:19-cv-00204-JSM-PRL, 2019 U.S. Dist. LEXIS 114553, at *4 (M.D. Fla. June 26,2019).* The first step is to eliminate any allegations in the complaint that are merely legal conclusions. *ADA v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)(citing *Iqbal* and *Twombly*). The second prong it to assume the veracity of the well-pleaded factual allegations to determine whether those allegations plausibly give rise to an entitlement to relief. However, in examining factual allegations in the complaint which have "obvious alternative explanation[s]," Courts may infer lawful conduct rather than the unlawful conduct. *Id.* (citations omitted).

### 3. THE TCPA CLAIM (COUNT I)

The Plaintiff's complaint is vague and does not specifically allege that Defendant used an ATDS to place the calls or that the recordings were not done without human intervention. The complaint does refer to Defendant's calls in a conclusory manner as "robocalls," (Doc.#1, at ¶28)

however, that conclusion need not be accepted as true for purposes of the motion to dismiss. In other places the complaint alleges that Defendant placed the calls to Plaintiff's cellular phone without any clarification of how the call was placed. *See Id.* at ¶¶ 24, 27, 29, 32, 50, 60, 66, 70. In some cases the Plaintiff alleges that Defendant "placed or caused to be placed" without further elaboration. *Id.* at ¶¶ 32 and 50.

The TCPA provides that "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

To the extent that consent to call could be construed as an "affirmative defense [it] may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim," since "the defense is apparent on the face of the complaint." *White v. Padgett*, 475 F.2d 79, 82 (5th Cir.), *cert. denied*, 414 U.S. 861, 94 S. Ct. 78, 38 L. Ed. 2d 112 (1973); *see also Hudson Drydocks, Inc. v. Wyatt Yachts, Inc.,* 760 F.2d 1144, 1146 n.3 (11th Cir. 1985).

The complaint is completely devoid of allegations which establish that an ATDS was used. It is unlikely that Plaintiff could allege that Defendant used an ATDS based upon the recent decisions of *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173, 209 L. Ed. 2d 272 (2021)(where the United States Supreme Court recently concluded that "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called.") *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020), *Northrup v. Innovative Health Ins. Partners, LLC*, No. 8:17-cv-1890-T-36JSS, 2020 U.S. Dist. LEXIS 31851 (M.D. Fla. Feb. 25, 2020)*, and Timms v.*

*USAA Fed. Sav. Bank*, No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021) (District Court concluded that whether the phone system automatically dials the number, "UIP" or is agent dialed, "AIP" neither qualified as an ATDS since the numbers were not created by a random generator aor sequential number generator but rather from a set list of members based upon whether the members accounts were delinquent.) Based upon a failure to allege that the contact was initiated via an ATDS the complaint fails to establish a violation of the TCPA.

Further Plaintiff's conclusion that he did not consent to be called on his cellular telephone is not sufficient. TCPA consent can be implied by Plaintiff's conduct. For example, if the Plaintiff provided his cellular at the time he was admitted "[it] suffices to establish the consumer's general consent to be called under the TCPA." *Lawrence v. Bayview Loan Servicing, LLC*, 666 Fed. Appx. 875, 880 (11th Cir. 2016) (*citing In re Rule [*23] & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (1992 Ruling)*, 7 FCC Rcd. 8752, 8769). *See also Mais v. Gulf Coast Collection Bureau*, Inc., 768 F.3d 1110, 1123 (11th Cir. 2014) (providing cellular phone number to creditor as part of credit application reasonably evidenced prior express consent to be contacted at that number regarding debt). *See also Cinquini v. Synchrony Bank*, No. 8:16-cv-03409-CEH-TGW, 2018 U.S. Dist. LEXIS 228305, at *22-23 (M.D. Fla. June 11, 2018). The complaints allegations give rise to the question how did Defendant obtain Plaintiff's cellular telephone number unless it was provided by the Plaintiff? There is no allegation of how Defendant acquired Plaintiff's cellular phone number in the complaint. Since the complaint is absent any allegation of how the cellular phone number came into the possession of the Defendant, the Court may infer "'obvious alternative explanation[s],' which suggest lawful conduct rather than unlawful conduct . . . ." *ADA v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567, 127 S.

Ct. 1955, 1972 (2007)); *see also* (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937 (2009)). The obvious lawful conclusion is that the Plaintiff provided the cellular phone number and he forgot he gave his consent.[2] This would not be an unreasonable inference since the calls started a year before the suit was filed, and the emergency room services resulting in the bill were prior to that. As cellular phone directories do not exist, it would be difficult to conceive of a situation where Defendant would otherwise obtain Plaintiff's cellular phone number through a lawful means.[3] In addition, whether or not the Plaintiff *understood* that the forms he signed when he received emergency medical treatment included a TCPA consent is not important. What is important is whether his conduct was "reasonably understood by another to be intended as consent." *See Lucoff v. Navient Sol.*, LLC, 981 F.3d 1299, 1305 (11th Cir. 2020)(*citing Restatement (Second) of Torts* § 892(2). As a result, the Court need not accept as true the conclusion that Plaintiff did not consent when the only reasonable and lawful inference is that he provided his cellular phone number. It follows that providing the cellular phone number reasonably implies consent under the TCPA. *See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1308 (11th Cir. 2015) (providing a phone number on a form, even without an express consent provision, constitutes consent under the TCPA). Additionally, there is nothing in the TCPA which prohibits a caller such as Defendant from obtaining consent through an

---

[2] The complaint alleges that "Plaintiff informed Defendant he no longer wished to be contacted on his cellular telephone." (Doc. # ¶ 65) The "no longer wished language" implies that at some point he was alright with being contacted on his cellular phone which negates his conclusory allegation that he did not consent. Likewise, the allegation that "Defendant did not have consent to place calls to or and leave pre-recorded voicemails on Plaintiff's cellular phone *after* Plaintiff requested that collection calls cease." (Doc. # ¶ 51)(emphasis added), implies there was prior consent before the cease collection allegedly occurred. Otherwise, there is no need to qualify the lack of consent until after the cease request.

[3] There are internet sites that promise a reverse look-up, but are expensive, time consuming, and not guaranteed to be the most accurate information.

intermediary. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123 (11th Cir. 2014)(quoting In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition, 29 F.C.C.R. 3442, 3447 (2014)). As a result, the reasonable inference based upon the allegations of the complaint is that Plaintiff provided his cellular phone number and as a result, did consent for purposes of the TCPA. Therefore Count I should be dismissed.

### 4. THE FDCPA CLAIMS (COUNT II)

The complaint alleges that "Plaintiff requested that Defendant cease its collection calls" and "Defendant did not have consent to place calls to or . . . leave pre-recorded voicemails on Plaintiff's cellular phone *after* Plaintiff requested that the collection calls cease." (Doc. #1, ¶ 51)(emphasis added). Plaintiff alleges this was done during a phone call in November 2020. *See Id.* ¶¶ 20-21. Plaintiff concludes that "any" calls after the verbal cease and desist were at an "inconvenient time for Plaintiff[,]" *id.* at ¶60, in violation of §1692c(a)(1). Plaintiff also asserts that Defendant violated §1692d(5) which prohibits a debt collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number." Plaintiff's allegation to support these claims are merely conclusory and simply quote the language of the statute. Plaintiff alleges that "Defendant violated § 1692d and d(5) by numerous unwanted and unconsented to collection calls [to] Plaintiff's cellular phone number in an attempt to collect the subject debt *after being requested to cease the unwanted calls* and pre-recorded voicemails." (Doc. #1, ¶ 63)(emphasis added). Thus, it was the failure of the Defendant to honor the verbal request to cease further communications which made any future calls at an inconvenient time.

The complaint refers to "unconsented" calls,[4] (Doc. #1, ¶¶ 27, 29 and 63) and mentions a single call on November 6, 2020,[5] where Plaintiff recounts that he "advised that he had no money to pay the alleged subject debt[,]" and "requested that Defendant cease its collection calls to him." (Doc. #1, ¶¶ 20-21). Plaintiff alleges that Defendant "stated that the debt wouldn't just disappear." (Doc. #1, ¶¶ 22). No other communications were specifically alleged and no allegations were made that Plaintiff's instruction to cease collection calls was ever made in writing.

Subsection (c) of section 15 U.S.C. § 1692c entitled "Ceasing communication" provides in pertinent part that "[i]f a consumer notifies a debt collector *in writing* that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt. . . ." (Emphasis added). Since the Plaintiff's cease calling request was not a written request, Defendant was not obligated to stop calling. *See Beard v. Sentry Credit, Inc.*, No. CIV S-10-2218-KJM-GGH, 2012 U.S. Dist. LEXIS 124689, at *16 (E.D. Cal. Aug. 30, 2012); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014)("The FDCPA explicitly specifies that '[i]f a consumer notifies a debt collector *in writing* that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt.'")(emphasis added). Thus, in order for the debt collector

---

[4] Plaintiff also alleges that the calls were made without his consent. *See* (Doc. #1, ¶¶ 50-51). However, since he has not alleged in a non-conclusory fashion that calls occurred using an ATDS Defendant need not address factually whether there was express consent.

[5] Defendant records calls and keeps separate notes of calls with consumers as part of its normal business practices and while this is a disputed fact to be determined at a later time, there appears to be no evidence that Defendant ever had a conversation with Plaintiff about the "alleged subject debt."

to be obligated to honor the cease and desist it must be made in writing.[6] The complaint only alleges a verbal cease and desist occurred. The complaint alleged that "any" calls were at an inconvenient time after the verbal cease communication occurred. (Doc. #1, ¶ 60). Plaintiff incorrectly concludes that such calls were a violation of § 1692c(a)(1). However, since the alleged verbal cease instruction was not legally sufficient, the claim that "any" calls following the unenforceable cease instruction were not necessarily at an inconvenient time. The complaint contains no other allegations to support the claim that calls were made at an inconvenient time, therefore this claim is insufficient as a matter of law and should be dismissed.

The remaining conclusory allegations of numerous unwanted calls without any specificty as to number, duration, frequency or further factual support are insufficient as a matter of law to support a claim that Defendant violated the FDCPA (§ 1692d(5)).[7] *See Waite v. Fin. Recovery Servs.*, No. 8:09-cv-02336-T-33AEP, 2010 U.S. Dist. LEXIS 133438 *10 (M.D. Fla. Dec. 16, 2010) (finding that even evidence of 29 calls made in a single month was insufficient to prove a violation of § 1692d(5) where there was no other evidence of conduct showing an intent to harass). Likewise in *Tucker v. The CBE Group, Inc.*, 710 F. Supp. 2d 1301, 2010 U.S. Dist. LEXIS 54892, 2010 WL 1849034 (M.D. Fla. 2010) (the court found that facts did not raise reasonable inference of intent to harass where debt collector made 57 calls to the plaintiff,

---

[6] The writing requirement while a minimal extra imposition on a consumer helps to avoid confusion which might happen with a verbal cease and desist request. It helps identify if the cease and desist in qualified or not. The consumer may not want to discuss the matter further until documentation to support the debt is provided by the debt collector. There may be more than one debtor on the account and a written request may spell out whether it applies to all debtors or just the recipient of the call.

[7] Since the state law claim under the FCCPA (§ 559.72(7), Florida Statutes) is similar to the FDCPA claim under § 1692d(5), the argument for § 1692d(5) applies to Count III alleging a violation of § 559.72(7), Florida Statutes. *Trent v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007) "[W]hen applying the provisions of the FCCPA, 'great weight shall be given to the interpretations of . . . the federal courts relating to the federal [FDCPA].'").

including seven calls in one day, because the debt collector never spoke to the debtor, was never asked to cease calling, and never called back on the same day it had left a message). In this case, there are no specific allegations claims as to the pattern of phone calls, *see Brandt v. I.C. Sys., Inc.*, No. 8:09-cv-126-T-26MAP, 2010 U.S. Dist. LEXIS 14588, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010), or any other allegations of egregious conduct. Therefore Plaintiff has not alleged a violation of either § 1692d(5) or subsection 559.72(7), Florida Statutes. *O'Guin v. Webcollex, LLC,* No. 8:20-cv-1471-KKM-SPF, 2021 U.S. Dist. LEXIS 147670, at *5 (M.D. Fla. Aug. 6, 2021). As a result, the FDCPA claim in Count II for alleged violation of §1692d(5) as well as the Count III FCCPA claim for alleged violation of § 559.72(7), Florida Statutes, should be dismissed as a matter of law.

### 5. THE FCCPA CLAIM (COUNT III)

As mentioned above, the FCCPA claim specifically 559.72(7), Florida Statutes should be dismissed for the same reasons as the claim for alleged violation of §1692d(5) of the FDCPA. In addition, if the Court were to dismiss Counts I and II as Defendant argues herein, then the only remaining claim would be the state law claim under the FCCPA (Count III). Upon dismissal of all federal claims, district courts are encouraged to dismiss the remaining state law claim(s). *Laster v. Careconnect Health Inc.*, 852 F. App'x 476, 479 (11th Cir. 2021)(*quoting Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004)("[w]e have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.")*) see also 28 U.S.C. § 1367 (c)(3)* ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction.").

CONCLUSION

For the foregoing reasons, Defendant, Preferred Collection and Management Services, Inc., requests that the complaint be dismissed.

          By:    /s/ Robert A. Vigh
                 ROBERT A. VIGH
                 FBN: 0991902
                 SOLOMON, VIGH & SPRINGER, P.A.
                 P.O. BOX 3275
                 TAMPA, FL 33601-3275
                 (813) 229-0115
                 Rvigh@svslawfirmn.com (primary)
                 Robvigh@gmail.com (secondary)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 5, 2021, I electronically filed the foregoing document with the clerk of the court using CM/ECF, and that a Notice of Electronic Filing of the foregoing has been generated and is being served upon all counsel of record this date.

          By:    */s/ Robert A. Vigh*
                 ROBERT A. VIGH
                 FBN: 0991902